First case up this afternoon is 412-0003, People v. Martinez-Gonzalez, for appearance of the appellant William Gregory. You are he, sir? Yes, sir. And James Majors. Mr. Gregory, you may proceed. Counsel. Good afternoon, Your Honors. My name is William Gregory, and I am here on behalf of the defendant, Jose Martinez-Gonzalez. We filed the appeal on this matter, appealing the defendant's conviction for the unlawful delivery of between 1 and 15 grams of cocaine. This matter was tried, and at the trial, obviously there was a variety of evidence that was presented, and just obviously the court has our briefs, but as far as just a background on this case, I mean basically what the evidence shows is that Jeremy Skeen, who was a confidential informant, had contacted the police officers a couple days before Christmas, knew that if he turned over someone to the police involved in the sale of illegal drugs, that he would be paid to do so, testified that he set up a purchase of cocaine from the defendant, Mr. Martinez-Gonzalez. Based on the evidence, the officers indicate that they met with Mr. Skeen at a parking lot at a Red Lobster restaurant near Veterans in Oakland in Bloomington. There is some different testimony in regards to what occurred in that parking lot as far as how Mr. Skeen was searched by the officers. Officer Lake, Officer Rinken, and the informant have some slight variances in regards to what occurred in that parking lot. Nonetheless, there was some sort of a search that was conducted, at least of Mr. Skeen. There's some question in regards to how the search was conducted of the vehicle that Mr. Skeen was driving at the time. According to Officer Lake, both Officer Rinken and Officer Lake were in Officer Lake's vehicle. They then followed Mr. Skeen from Red Lobster across town to a parking lot between famous Dave's restaurant and a gas station. At which point, Mr. Skeen pulled up and met with the defendant. The vehicles were pulled up next to each other and there was a brief encounter between the two. At which point, as the video clearly shows, the defendant gets into Mr. Skeen's vehicle, is in the vehicle, they have a short discussion, the defendant gets back into his vehicle, Mr. Skeen leaves, and then the defendant had remained at the scene for some period of time and then walks up into the gas station. After he goes into the gas station, Officer Lake, who was in charge of the video, his vehicle several minutes later, then leaves the scene. And based on their testimony, they meet up with Mr. Skeen back at the Red Lobster sometime later in the day. At which point, they allege that they were provided a baggie of cocaine from Mr. Skeen, which they allege was what the defendant had sold to him in that brief encounter at the other parking lot. Now, the basis of our appeal, we raised two issues in the appeal. The first is the chain of custody. The second is the weight of the evidence as he was charged with unlawful delivery of between 1 and 15 grams. The main issue that we really have, though, is with the chain of custody. Because we do not believe that the state has met its burden in regards to proving the chain of custody in regards to this. The state presented a baggie of cocaine at trial, which they allege was sold by the defendant to Mr. Skeen in this parking lot. However, we do not believe that they have proven that the evidence that they presented to the court is, in fact, something that was given to the defendant by Mr. Martinez. In the video, you cannot see any exchange between the parties. In fact, the only witnesses to that exchange are the defendant and Mr. Skeen. And their versions of what happened are clearly different. Why isn't it good enough that the cops check Skeen before they send him out to the transaction? After the transaction, they check him and he's got the cocaine. He didn't have it before, he has it then. I don't believe that that's necessarily what happened, though. I mean, there's some confusion as to what happened as far as the search of the vehicle prior to the incident. Well, C.I. Skeen testified himself, too, didn't he? Yes, he did. Would it be sufficient to sustain the defendant's guilt just on the basis of his testimony alone? I don't believe so. Because I believe that, first of all, Mr. Skeen testified that he doesn't know what cocaine is, that he'd never seen cocaine, that he has no information to indicate that the defendant gave him cocaine, and that he was not clearly able to identify... He knows the defendant gave him something, right? Clearly, that's his testimony, is that the defendant gave him something. Why isn't that good enough? That was his testimony, wasn't it? Because the question is, well, what did he give him? I mean, the burden on the state is to show that what he gave him was the cocaine that was admitted to trial. Well, didn't the C.I. say, I gave this item that I got from the defendant to the police? I believe that that was his testimony. Okay. And then the police said, we got this item from the C.I., and it was tested, and here's the results. Well, but you had two different versions of what happened from the police officers. I mean, Officer Lake said that he kept the evidence until the next day, and then he deposited the evidence in the vault the next day. Officer Rankin said, no, I kept the evidence, I put it in my car, even though Officer Lake says that he didn't have his car there. He says, I put it in my car at the time that we met with Mr. Skeen, and then I deposited it in the evidence vault that same day. So there's two different versions of what happened to this. What did the trial judge say about that? Well, the trial judge said that he was deferring to Officer Rankin because Officer Rankin was the one that was in charge, and that he believed that it would be his opinion that Officer Rankin probably had a better memory of what occurred because he was the one in charge versus Officer Lake being someone who was just being directed as to what to do. Is the trial judge, as a prior fact, permitted to so conclude? Well, if his conclusion is supported by the weight of the evidence, but the fact is that if you look at it, Officer Lake testified. I mean, if the judge is saying, look, I think Officer Rankin is telling the truth, and I think that Officer Lake is wrong because Officer Rankin was in charge. However, Officer Lake had a video. I mean, he's the one that ran the video camera, and his testimony is consistent with what's on that video camera. Officer Rankin's is not. And so there's clearly an issue here in regards to what truly happened, and you've got two officers telling two completely different stories. And the officer that the judge found to be credible, his testimony is absolutely contradicted by what's on that video. Did the bag of cocaine have the defendant's name on it? I don't believe it had his name on it. What did it have on it? It had markings as far as deposits and initials. So the officers testified that that was the bag that they'd put in the locker. Well, yeah, but they both testified that once they deposited it, nobody else could get it out other than separate individuals that they couldn't. And they both testified that they believed that their initials were on that bag. However, if you look at their testimony, if, for example, Officer Rankin is correct that he initialed the bag and deposited it in the vault on the day of the incident, then there's no way that Officer Lake also was able to initial that bag and deposit it into the vault the next day. Because based on their testimony, Officer Lake couldn't have been able to get it out of the vault. Whose initials were on the bag? That's what I'm saying. I don't think we know. I mean, they both testified that each of them's initials were on the bag, but if each of them's initials were on the bag, based on the way they testified that things were, it couldn't have been. What if they both initialed the bag? Well, then they didn't. See, but that doesn't make sense based on their testimony. But what did they say? I mean, they said that when they deposited it in, they initialed it as the person who deposits it into the vault. What did the bag show? I don't have the picture of the bag in front of me. One of the problems is that – I mean, there's initials on the bag, but I don't – as far as the markings on the bag, I don't believe that it verifies one way or the other for sure which one was correct. One of the problems is the defendant didn't object to this at trial. Object to what? The admission of the cocaine. I believe we objected to – when it was admitted, we objected on the basis that it was – on the basis of the chain of custody. On the basis that – we admitted that it tested positive for cocaine based on Mr. Nielsen's report, but we objected to it being the actual cocaine – actually something that came from the defendant. I mean, you know, the officers can come in, and they can come in with a bag of cocaine, and they can say, here you go, we tested this, this is cocaine, and we know that it's cocaine, and here's a little baggie with a bunch of initials on it, but if they can't show that that came from the defendant, that the defendant sold it to somebody, then it's just a bag of cocaine. And we don't know where it came from. And that's our argument, is we don't know. I mean, at this point, it's unclear. When the bag was offered into evidence, was any objection made? Yes. He was objected to at that time, not simply later on arguing that the evidence was insufficient? No, when it was offered into evidence, it was objected to. Go ahead. Okay. And so, I guess, that is basically kind of a summary of it. It's our position that, based on the contradictions in testimony between Officer Lake, Officer Rankin, and Mr. Skeen, as to how this evidence was supposedly obtained, how this evidence was supposedly preserved, and how this evidence was supposedly marked, I don't believe that there's, I mean, there has not been a chain of custody to establish that what was admitted at trial was something that ever came from the defendant. I mean, there's contradictions as to what supposedly happened to whatever was given to Mr. Skeen at the scene. And I don't believe it's clear, and obviously, I mean, the trial court even noted, I mean, the trial court made note of the fact that there were differences in their testimony. The trial court made note of the fact that Officer Lake and Officer Rankin clearly contradicted themselves in regards to how this search occurred, what happened to the evidence after the fact, and, you know, how, in fact, this alleged evidence even got to court. And so it's our position that the state has now met the burden of proving that the evidence that was submitted was actually delivered to Mr. Skeen by the defendant. What did you say about the markings on the bag at trial when it was offered to evidence? What did I say about the... I mean, I didn't say... I mean, the officers... Well, it's an issue now you've raised about who wrote what on the bag. Correct. Did Rankin initial it? Did Lake initial it? They both testified that the initial of the bag... What does the bag show, and what did you argue at the time? Well, I mean, our argument is that the officer's testimony about what the bag shows is contradictory. What is the bag... What did you see on the bag, and what did you argue at the time about what the bag showed? At the time that it was... Offered into evidence? At the time that it was offered into evidence, we objected to it based on... What did you see on the bag? What does the bag show? The bag shows... What did you say about it at the time? Two-part question. What did you see on the bag? The bag has initials on it, and dates on it. Okay, but our argument was that the officer... What initials were on the bag? Off the top of my head, it's been so long since I've seen it, that... Were there two sets of initials? There were more than that, because... The other thing is, because there's an officer who testified... They testified that there's initials that, when they took it out of the vault, who took it out of the vault, when they took it to the... To be tested, there's separate initials. So there's several, and there were more than one initial on the bag. Okay. So, I mean, as far as... Did you ask Rankin and Lake about whether they testified or whether their initials were on the bag? Yes. And did they identify them for you? Both of them said that their initials were on the bag. Did they identify, here's my initials? I believe they did, yes. Okay. But, again, that is contradictory. If, in fact, both of their initials are on the bag, it's contradictory the way they state that this process is handled. So one of them was mistaken about the process? So one of them had to be mistaken. Therefore, the trial judge couldn't believe it was the same bag? Well, when he defers to an officer, I mean, there's a contradiction in evidence as to what happened to this evidence. I mean, there's a divergence between what possibly, where this evidence was taken. Isn't there, if you're challenging the chain of custody, don't you have some burden to demonstrate that it was tainted in some fashion? Well, I believe that, I mean, the possibility, I mean, as far as specifically, I mean, I believe that the, I mean, the burdens on the state show that the chain of custody was proven. And that we just have to show that there's a question in regards to whether or not what's actually being admitted as evidence is, in fact, what they're claiming that it was. And so what we're saying is that we don't believe that the facts are sufficient due to the inconsistencies in the officer's testimony as to whether or not what was actually presented to the court. Had Lake never testified at all? I'm sorry? Had Lake never testified at all, would you have any argument to make to this court? Well, we would have the argument to make based off of the differences between Rankin's testimony as far as the search of him and his vehicle, both before and after, as to whether or not that there was actually a, you know, whether or not the search was conducted, how it was conducted, whether it was conducted. I mean, he testified differently as to what Rankin testified in regards to the search of the vehicles to confirm that there were no drugs. I mean, this is an individual who's admitted that he's had drug problems in the past. He's admitted that, you know, he's got convictions for dishonesty. He's admitted that he's getting paid for his part in this thing. Was Rankin the one who made the police report? Yes. Lake did not? No, Lake did not. And there was no arrest made in this case for, what was it, 14 months? For 14 months, correct. So Lake has been testifying to the best of his recollection? I believe that that would be, I mean, obviously, that was one of the issues that came up at trial. Did he bring that out at trial? I'm sorry? Did he bring out at trial that he didn't write a police report? That he didn't write the police report? Did you cross-examine him at trial about the fact that he wrote no police report? Oh, that Lake wrote no police report? Because Rankin wrote the police report. Did you cross-examine Lake at trial about the fact that he wrote no police report? I don't recall. I don't recall. I know that we went through the video evidence because he had the video, and he testified most of his testimony was specifically going through the video that he recorded. As far as identifying what was happening on that video as it occurred, and identifying, you know, who was saying what, because there was at one point where you could hear somebody saying, Chris, are you coming back? Chris, are you coming back? He identified that that was after the informant had left the scene of the meeting, and he was waiting for Christopher Rankin, Officer Rankin, to come back to the vehicle, whereas, you know, Inspector Rankin had testified that he drove separately, that he had followed the informant from the scene directly, and that the informant had never left his site, even though Officer Lake on video is testifying that Rankin was in his car, and that they did not drive separately, and that after the informant had already left the scene for a couple minutes, he's clearly noted on this video as having, asking Inspector Rankin if he's coming back to the car so that they can go and then meet with the informant after that. The defendant admitted that he was the person shown on the video? Yes. What did the defendant say? He was selling something to the informant? No. He said that to the best of his recollection, what had happened was they were discussing that the informant, they worked together, they were coworkers, and the place that they actually, like I said, the place that they met was a parking lot between their place of employment and a gas station. And he said that it was his understanding that he had asked him to cover for him in regards to a shift over the holidays, because this was two or three days before Christmas, and that he had just got in and said, hey, can you cover this shift or something along those lines as far as the reason for that meeting, which is him asking him, hey, you know. Is it clear that the confidential informant had $370 before the incident and did not have $370 after the incident? I believe it's clear that he had it before. I don't know that it's clear that he had it afterwards, because I believe Rankin said he doesn't know what happened to the money afterwards. They could have hidden it in the car? I believe that's possible, based on their description of the search of the vehicle, yes. What about the experience trial judge commenting that he thought that, as CIs go, this one was particularly believable? Well, I mean, that's a comparison between him and other informants. I guess I would take that as saying that, you know, most informants are completely unbelievable and that this one may be more believable than some of the others, but that doesn't change the fact that he's getting paid for this, that he's had a history of drug use, that he's had a conviction for dishonesty, so he's had that background. So I don't think that that changes those factors. And that's not him coming up and saying, you know, I find this guy totally credible. That's him saying, compared to the last guy that was in here, you know, he's better than that guy, but we don't know who that guy was. You know? I mean, so as far as what he's comparing him to, it's a comparison, but it's not, you know, it's not a statement saying, you know. Well, he didn't think much of your client's credibility, did he? Based on his comments, I can't speak to that. The defendant is not found to be credible by the court, and the court would have to believe that Roentgen was lying about their interview and the admissions the defendant had made, not about this particular incident, but about selling cocaine or giving it to his friends. And again, I mean, that evidence was not about this particular offense, and he denied this particular offense. So Roentgen was lying, according to your client? I'm not saying that Roentgen was lying about the interview. Well, that's what your client said, though, wasn't it? No, he didn't say that he was lying about the interview. He said that he denied selling the cocaine. Roentgen is lying about the interview and about the admissions the defendant made. I would disagree with that characterization, because I believe that you can still... Okay, well, thank you, counsel. You have an opportunity to address this again in rebuttal. Mr. Majors? That pleases the court, counsel. The court has already been through all the facts, so I'll just try to answer the questions if there are any. What about the objection? Was there an objection on foundation grounds made when the evidence was offered? No, Your Honor. So Mr. Gregory is mistaken when he says he objected on that basis? I believe he is mistaken, yes, sir. When did he raise the issue at the trial level? The admissibility of the... Well, the whole... Was that a closing argument on the sufficiency of the evidence? I think it was offered into evidence, and he said he had no objection, and I think was some conditioning language. And then in closing, they said, well, we got the report from Nielsen, I think his name is, and it says what it says. I'm looking for the actual quote in my brief here. So we're not objecting necessarily. Obviously, we got the report from Mr. Nielsen, who weighed and identified the substance with regard to what's in the bag. That's when it was offered? No, that was in closing argument. When it was offered, I think, I'm on page 92 of the transcript. No, I'm sorry, I'm on the wrong page. It's somewhere in there. That's it. Subject to argument in regards to what it actually what, to it actually being what it appears to be, we would have no objection. I'm on page 123. Okay. Anything else? No, unless there's questions for me. Don't see any. Thank you. Mr. Gregory, that was short, but if you want an opportunity to address this again, you may. I guess the only thing I would say is I believe that that first comment was just made in regards to Mr. Nielsen's report and not in regards to the actual admission of the cocaine. Thank you, counsel. Thanks for advising and being resourceful.